# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIEGO NOE VIJIL FALLA, | Case No. 1:26-cv-00526-JLT-EPG-HC |
| Petitioners, | FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER |
| v. | |
| WARDEN GOLDEN STATE ANNEX, et al., | |
| Respondents. | |

Petitioner is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted and Respondents be directed to immediately release Petitioner.

**I.**

**BACKGROUND**

Petitioner is a citizen of Honduras who entered the United States alongside his family in January 2019 and requested asylum. (ECF No. 1 at 2; ECF No. 15 at 2.[1]) After a brief detention, Petitioner and his family were released on parole subject to reporting requirements.[2] (ECF No. 15 at 2.) On February 28, 2020, an immigration judge ("IJ") denied Petitioner's asylum claim, ordered Petitioner removed to Honduras, and granted withholding of removal to Honduras. (ECF

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.
[2] As Petitioner was fourteen years old when he and his family entered the United States, Petitioner did not have individual reporting requirements. (ECF No. 1 at 2–3; ECF No. 17 at 2 n.1.)

No. 15 at 2; ECF No. 9 at 5.)[3] It is undisputed that the order became final on February 28, 2020, as neither Petitioner nor the Government appealed that determination, and the time to do so has expired. (ECF No. 9 at 5.)

On December 8, 2025, Petitioner and his family reported to U.S. Immigration and Customs Enforcement as instructed and were taken into custody. (ECF No. 17 at 2.) That same day, Petitioner was provided a written "Notice of Removal" that stated: "This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to Mexico." (ECF No. 9 at 7.) Petitioner did not sign the written notice and requested to speak with an asylum officer. (ECF No. 1 at 3; ECF No. 9 at 7.) Petitioner was detained at Golden State Annex. (ECF No. 17 at 3.)

On December 11, 2025, Petitioner was transported to Fresno and spent the night in the ICE office. (ECF No. 17 at 3; ECF No. 17-2 at 1.) On December 12, 2025, without notice or an opportunity to prepare, Petitioner had a credible fear interview over the phone about potential removal to Mexico. (ECF No. 17-2 at 1.) A U.S. Citizen and Immigration Services ("USCIS") officer found that Petitioner did not establish that it was more likely than not that he would be persecuted or tortured upon removal to Mexico.[4] (ECF No. 9 at 9.) Petitioner remains detained at the Golden State Annex Detention Facility in McFarland, California.[5]

On January 21, 2026, Petitioner filed a *pro se* petition for writ of habeas corpus and motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) On January 26, 2026, Respondents filed a response to the motion for TRO. (ECF No. 9.) On January 27, 2026, the Court granted Petitioner's motion to appoint counsel. (ECF No. 12.) On February 3, 2026, Petitioner filed a reply in support of the motion for TRO. (ECF No. 15.)

---

[3] Petitioner and his family were never formally placed on an order of supervision and instead continued with the same periodic check-ins that were required prior to the grant of withholding. (ECF No. 15 at 5 n.3.)

[4] Petitioner states in a sworn declaration that he never received notice of the results of his credible fear interview and that officers repeatedly told him there was no record of the interview in the system. (ECF No. 17-2 at 1–2.)

[5] On January 22, 2026, the same day the Court ordered that Petitioner not be transferred out of this District, (ECF No. 4), Petitioner was transferred to Florence, Arizona, (ECF No. 17-2 at 2). Respondents transferred Petitioner back to Golden State Annex on January 31, 2026, after appointed counsel inquired as to his location. (ECF No. 14; ECF No. 17-2 at 2.)

The assigned district judge construed the petition as raising a due process claim regarding Respondents' third country removal procedures and a <u>Zadvydas</u> claim regarding Petitioner's ongoing detention. (ECF No. 16 at 4 & n.7.) On February 18, 2026, the district judge denied preliminary injunctive relief, finding that "Petitioner appears to have been already afforded adequate process in relation to his potential removal to Mexico" and that "Petitioner does not account for the fact that he has been detained for just over two months—four months short of the six-month benchmark established in *Zadvydas*." (<u>Id.</u> at 7 & 4 n.7.) The Court set a briefing schedule and referred the matter to the undersigned. (<u>Id.</u> at 8–9.) On March 20, 2026, Petitioner filed an additional brief. (ECF No. 17.) To date, no responsive brief has been filed, and the time for doing so has passed.

## II.

## DISCUSSION

The petition, filed by Petitioner *pro se* before appointment of counsel, asserts that: (1) "Petitioner's continued detention, without a warrant, without written notice, without a hearing, and without a decision following his credible fear interview, constitutes prolonged detention without meaningful process" in violation of due process and <u>Zadvydas v. Davis</u>; (2) Petitioner's continued detention without individualized justification for detention is arbitrary and unlawful; and (3) ICE proceeding with a credible fear interview despite Petitioner's request for the presence of his attorney violated Petitioner's right to counsel. (ECF No. 1 at 3–4.) In his counseled additional brief, Petitioner states that although "perhaps inartful as a *pro se* filing, Diego's Petition is most naturally read as claiming a Due Process violation based on his re-detention without prior notice, without explanation of the basis for redetention, and without a hearing at which he could contest that basis." (ECF No. 17 at 6.) "As Judges Nunley and Drozd did with his parents' petitions that raised nearly identical factual and legal claims, this Court should construe Diego's Petition as raising a claim that his Due Process rights were violated when he was re-detained without notice or hearing." (<u>Id.</u> at 7.)

"It is an entrenched principle that pro se filings however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers. We are specifically directed to

3

construe pro se pleadings liberally. This duty applies equally to pro se motions and with special force to filings from pro se inmates." United States v. Qazi, 975 F.3d 989, 992–93 (9th Cir. 2020) (internal quotation marks and citations omitted). Accordingly, the Court recommends construing the petition as raising a claim that Petitioner's due process rights were violated when Petitioner was re-detained without prior notice and a hearing.

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

**A. Liberty Interest**

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts

a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025). Accordingly, the undersigned recommends finding that Petitioner has a protected liberty interest in remaining out of immigration custody.

**B. Mathews Test**

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

\\\

5

With respect to the second factor, "'the risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" J.A.E.M., 2025 WL 3013377, at *7 (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 871334, at *5 (E.D. Cal. Mar. 19, 2025)). "Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed." Yan-Ling X. v. Lyons, No. 1:25-cv-01412-KES-CDB (HC), --- F. Supp. 3d ----, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025). "Section 241.13(i) permits revocation of release 'if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" Id. (quoting 8 C.F.R. § 241.13(i)(2)). "Upon revocation, the noncitizen must 'be notified of the reasons for the revocation of his or her release,' and given 'an opportunity to respond to the reasons for revocation stated in the notification.'" Vijil Acosta v. Warden of the Golden State Annex Det. Facility, No. 1:26-cv-00530-TLN-EFB, 2026 WL 350831, at *4 (E.D. Cal. Feb. 9, 2026) (quoting 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3)). Here, Petitioner was re-detained "without notice, without a prior showing that circumstances had changed to justify his detention, and without an opportunity to contest the decision to detain him." (ECF No. 17 at 2.) "[A]s there have been no procedural safeguards to determine if petitioner's re-detention is justified, 'the probable value of additional procedural safeguards . . . is high.'" Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *10 (E.D. Cal. Nov. 12, 2025) (quoting A.E., 2025 WL 1424382, at *5).

With respect to the third and final factor, "although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" J.A.E.M., 2025 WL 3013377, at *7 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe, 787 F. Supp. 3d at 1094). See Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Courts generally have found that the cost of

providing a custody hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a pre-deprivation hearing would be fiscally or administratively burdensome. See J.A.E.M., 2025 WL 3013377, at *7 ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citing Doe, 787 F. Supp. 3d at 1094)).

On balance, the Mathews factors show that Petitioner is entitled to notice and a hearing to determine whether re-detention was warranted. Petitioner has demonstrated that he has a strong liberty interest in remaining out of custody, that the risk of erroneous deprivation will be meaningfully reduced by requiring notice and a hearing, and that the governmental burden in providing such procedure is quite minimal. Accordingly, the undersigned recommends granting the petition on the construed due process claim challenging Petitioner's re-detention.[6] See Vijil Acosta, 2026 WL 350831 (finding Petitioner's father "was entitled to notice and a hearing to determine whether re-detention was warranted," "Respondents did not provide either," finding likelihood of success on the merits of procedural due process claim was shown, and granting temporary restraining order); Falla Portillo v. Facility Dir., No. 1:26-cv-00663-DAD-EFB, 2026 WL 279895 (E.D. Cal. Feb. 3, 2026) (finding ICE's failure to provide Petitioner's mother "with written notice regarding the reason for the revocation of her release, and an informal interview where she would have the opportunity to respond to the reasons for revocation likely violated due process and that petitioner is likely to succeed on the merits of her due process claim" and granting preliminary injunction).

## C. Appropriate Remedy

"[M]any courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest." Huang v. Albarran, No. 1:25-CV-01308 JLT EPG, --- F. Supp. 3d ----, 2026 WL 279888, at *8 (E.D. Cal. Feb. 3, 2026) (citing J.L.R.P. v. Wofford, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *8–10 (E.D. Cal. Nov. 14, 2025); Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5

---

[6] In light of this conclusion, the Court declines to address Petitioner's other claims.

(N.D. Cal. Aug. 21, 2025)). "[W]here an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute and ICE fails to adhere to it, the challenged action is invalid." Huang, 2026 WL 279888, at *7 (quoting Yan-Ling X., 2025 WL 3123793, at *6).

Accordingly, the undersigned recommends finding that Petitioner's immediate release from custody is warranted.[7] See Vijil Acosta, 2026 WL 350831, at *6 (ordering immediate release of Petitioner's father); Falla Portillo, 2026 WL 279895, at *2 (ordering immediate release of Petitioner's mother); Yang, 2025 WL 2791778, at *5 (finding "failure to provide an informal hearing is alone sufficient to entitle petitioner to the requested" relief of release from custody); Liu v. Carter, No. 25-3036-JWL, 2025 WL 1696526, at *2, 3 (D. Kan. June 17, 2025) ("Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations," including not being "granted the required interview upon the revocation of his release," "that revocation has no effect, and petitioner is entitled to his release[.]"). Further, the undersigned recommends finding that "in the event of his re-detention, Petitioner has a right to a pre-deprivation hearing where the government bears the burden of showing that Petitioner's release poses a flight risk or danger to the community." Huang, 2026 WL 145631, at *9 (citing J.L.R.P., 2025 WL 3190589, at *9–10; Alva, 2025 WL 2419262, at *3–5).

### III.

### RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on the construed due process claim challenging Petitioner's re-detention.

---

[7] With respect to Respondents' contention that the "sole impediment to petitioner's prompt removal to Mexico at this juncture is this Court's minute order directing that respondents not remove petitioner from the United States nor transfer petitioner out of this district unless the Court orders otherwise," (ECF No. 9 at 2), Petitioner notes that Respondents have not provided evidence that Mexico will accept Petitioner or that travel documents for Petitioner have been procured, (ECF No. 17 at 9; ECF No. 17-2 at 2). See Falla Portillo, 2026 WL 279895, at *2 (finding that ICE's stated intention to remove Petitioner's mother to Mexico did not alter due process analysis because "simply applying for travel documents after detention is insufficient to show changed circumstances warranting petitioner's re-detention").

2.  Respondents be directed to immediately release Petitioner from custody subject to an order of supervision in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

3.  Respondents be enjoined and restrained from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**April 10, 2026**__                    /s/ _Erica P. Grosjean_
                                             UNITED STATES MAGISTRATE JUDGE